UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAURICE J. SINKFIELD, | Case No. 1:16 CR 146 |
| | 1:20 CV 21 |
| Petitioner, | JUDGE DONALD C. NUGENT |
| vs. | |
| | MEMORANDUM OPINION AND ORDER |
| UNITED STATES OF AMERICA | |
| Respondent. | |

This matter comes before the Court upon Maurice J. Sinkfield's ("Petitioner's") Motion to Vacate, Set Aside or Correct Sentence In Accordance With Title 28 U.S.C. § 2255. (ECF # 134,140). The government filed a Response in Opposition and Petitioner filed a Response to the Government's Opposition. (ECF #149, 150). Mr. Sinkfiled also filed a corresponding Motion for Discovery and Request for an Evidentiary Hearing. (ECF #141). This matter is now fully briefed and ready for disposition. For the reasons set forth herein, the petition, and the corresponding motion for discovery (ECF #134, 140, 141) are DENIED.

**Factual and Procedural History**

The United States Marshals approached Mr. Sinkfield in their cars on March 21, 2016 to execute an outstanding arrest warrant. At least one of the Marshal's vehicles had activated its lights

and sirens. Mr. Sinkfield, in an attempt to get away, crashed into the front of a Marshal's car, continued to accelerate while locked in place against the car, then reversed and struck another Marshal's car. He then fled. Both agents followed the petitioner until one of the agent's cars stopped working. Other officers saw a car resembling the petitioner's car and activated lights and sirens to follow it. The car did not stop and drove away at a high rate of speed.

The officers were finally able to execute the warrant on April 3, 2016. A search of the apartment where he was arrested turned up a loaded Bersa Thunder .45 caliber firearm, two .45 caliber magazines, a box of ammunition, and a shoulder holster. The items were found under the bed in the bedroom where Mr. Sinkfield had been when officers entered the apartment.

Mr. Sinkfield was indicted on May 5, 2016 for one count of assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b),(Count 1), and two counts of unlawful possession of a firearm in violation of 18 U.S.C. §922(g)(1) and (9), (Counts 2 and 3). Mr. Sinkfiled represented himself during a two-day trial, after which a federal jury returned a verdict of guilty on Count 1. The jury was not able to come to unanimous verdict of Counts 2 and 3. (ECF #94). On November 13, 2017, the district court sentenced Mr. Sinkfield to 110 months, to run concurrent to his state sentence, followed by three years of supervised release and a $100 special assessment. (ECF #97). Counts 2 and 3 of the indictment were dismissed at the government's request. (ECF #97).

Petitioner filed a timely notice of appeal, and the Sixth Circuit affirmed his conviction. (ECF #126). Petitioner then filed a Section 2255 petition that exceeded the required page limitations. (ECF #134). The Court did not dismiss the petition, but ordered that a compliant petition be filed by February 29, 2020. (ECF #139). On February 18, 2020, Mr. Sinkfield filed a compliant petition. (ECF #140).

## Standard for Relief

A petitioner that moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C. §2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) it is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426-27 (1962). In order to obtain relief under § 2255, a petitioner who entered a guilty plea "must demonstrate the existence of an error of constitutional magnitude" that had a "substantial and injurious effect or influence" on the plea. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). As such, a court may grant relief under § 2255 only if a petitioner has demonstrated "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation and citation omitted); *see also, United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). The burden is on the petitioner to prove his constitutional rights were denied or infringed by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

If a § 2255 motion, as well as the files and records of the case, conclusively show that the petitioner is entitled to no relief, then the court need not grant a hearing on the motion. *See* 28 U.S.C. § 2255; *see also Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (recognizing that evidentiary hearing is not required when the record conclusively shows that petitioner is not entitled to relief).

## Analysis

A. Jurisdiction

Mr. Sinkfield's first two grounds for relief challenge the Court's jurisdiction. He claims that the government lacked "territorial and legislative jurisdiction" over the privately owned parking lot where the offense occurred, and that the Court improperly permitted the government to prosecute the case under admiralty jurisdiction. These are not legitimate arguments and they have no rational connection to the facts of this case. United States district courts have original and exclusive jurisdiction over all violations of the laws of the United States, and have personal jurisdiction over any defendant brought before them on a federal indictment charging a violation of federal law. U.S. Const. Art. III, §2, cl. 1; 18 U.S.C. § 3231; *United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016). Mr. Sinkfield was indicted for and convicted of assault on a federal officer in violation 18 U.S.C. § 111(a)(1) and (b), a law of the United States. It is of no jurisdictional significance that the offense occurred on private property within the State of Ohio. Federal jurisdiction over violations of federal law are not dependent on a violation occurring on federally owned property. Although federal courts may also have jurisdiction over some traditionally state crimes when the crimes occur in areas defined as "special maritime and territorial jurisdiction," the offense Mr. Sinkfield committed did not have any such territorial element. Therefore, no such special jurisdiction was required to be shown.

B. Ineffective Assistance of Appellate Counsel

Mr. Sinkfield's third ground for relief alleges that he received ineffective assistance of appellate counsel. He claims that his appellate counsel failed to raise the following arguments on appeal: (1) the government's failed to comply with *Brady v. Maryland*; (2) the government failed to turn over cooperation agreements with witnesses in violation of *Giglio v. United States*; (3) the Court abused its discretion by excluding material evidence; (4) the jury instructions were

unconstitutional, incorrect, and unavailable to him for review; (5) the Court improperly added a eight levels to his total offense level at sentencing; (6) the indictment was based on perjured testimony; and (7) the Court failed to answer his pretrial discovery request motions. (ECF #140).

A defendant seeking to establish ineffective assistance of counsel must satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). These standards apply equally to ineffective assistance claims against appellate counsel. *See, McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). In *Strickland*, the United States Supreme Court held that a defendant must first show that counsel's performance was deficient. *Id.* at 687. This means that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687-88. This inquiry must be made in proper context, considering the prevailing circumstances and counsel's perspective at trial, and without relying on the 20-20 vision created by hindsight. *See, Id.* at 688-89. In addition, judicial scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The Court should presume that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Lewis v. Alexander*, 11 F.3d 1349, 1363-54 (6th Cir. 1993).

In addition to proving deficiency under this highly deferential standard, a defendant must show that the deficient error by counsel was prejudicial to his defense. *Strickland*, 466 U.S. at 692. It is not sufficient for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as nearly every conceivable "act or omission of counsel would meet this test." *Id.* at 693. Instead, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of appellate representation, "the court must assess the strength of the claim

appellate counsel failed to raise. Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007). Appellate counsel need not raise every possible issue on direct appeal to be effective. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Rather, effective advocacy sometimes requires that counsel "winnow[] out weaker arguments on appeal and focus[] on those more likely to prevail. . . ." *Smith v. Murray*, 477 U.S. 527, 536 (1986).

Mr. Sinkfield claims that his appellate counsel was ineffective for failing to raise the following alleged errors leading to his conviction.

    1.    <u>Government's failure to comply with *Brady v. Maryland*</u>

*Brady v. Maryland*, 373 U.S. 83 (1963) requires the government to provide the defendant with any exculpatory evidence in its possession. To comply with Brady, a prosecutor must "learn of any favorable evidence known to the others acting on the government's behalf . . . including the police." *See, Kyles v. Whitley*, 514 U.S. 419, 437 (1995). However, Brady "does not impose an affirmative duty upon the government to take action to discovery information which it does not possess." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). Further, Brady only applies to information that is known to the government and unknown to the defense at the time of the trial. *Abdur'Rahman v. Colson*, 649 F>3d 468, 474 (6th Cir. 2011).

The information Mr. Sinkfield believes should have been disclosed was dash cam video and recordings of two traffic stops that occurred before the incident at issue in this case. Those stops were conducted by officers of the Euclid Police Department and the Mentor Police Department. The federal government did not possess this alleged evidence. These two officers were not involved in the investigation of the offense for which Mr. Sinkfield was convicted. They were not employed by nor acting on behalf of the federal government. They were called as witnesses by the government

to establish a pattern of behavior by Mr. Sinkfield, but were not acting at any time on the government's behalf in connection with the instant offense. The government did not have possession of any dash cam video or recordings made by these two officers. To the extent that they may have been possessed by Euclid or Mentor's police departments, that possession is not imputed to the government.

In addition, Mr. Sinkfield knew the essential facts that would have allowed him to take advantage of any allegedly exculpatory information contained in the video/recordings. "No Brady violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991). Mr. Sinkfield was provided with police reports of the relevant traffic stops during discovery. The reports referenced video and audio recordings of the encounter. Therefore, he was aware of the existence of this evidence and could have obtained it on his own accord.

Finally, even if the video and audio recordings disclosed what Mr. Sinkfield claims – that he fled during those stops only after the police threatened to harm him – that information has no relevance to his guilt or innocence on the charge of assaulting different officers during a totally separate encounter. There was no legitimate legal basis for Mr. Sinkfield's attorney to claim a *Brady* violation under the circumstances, and he cannot, therefore, be considered ineffective for failing to do so.

    2.    <u>Government's failure to turn over cooperation agreements with witnesses in violation of *Giglio v. United States*</u>

Mr. Sinkfield contends that the government entered into non-prosecution agreements with two witnesses in exchange for their cooperation and testimony. He also claims that the government failed to turn over these agreements in violation of *Giglio*. Consistent with their obligation, the government disclosed law enforcement reports of its interviews with these witnesses. The record

demonstrates, however, that no non-prosecution agreements existed. Mr. Sinkfield has offered no evidence to the contrary. He has provided only wildly speculative conclusions based on wholly innocuous statements and circumstances which were disclosed to the jurors during cross-examination. To the extent that he believes they support an inference of a hidden agreement, or some form of coercion, the jury could have been considered when they assessed the credibility of those witnesses. There is no support for arguing that a violation of *Giglio* occurred, and Mr. Sinkfield's counsel was not deficient for failing to raise this alleged error on appeal.

3. Exclusion of material evidence

Mr. Sinkfield argues that his counsel should have argued that the Court violated his constitutional rights by denying admission of Deputy United States Marshal (DUSM) Lowe's official report of their encounter. There is no reason to believe that the exclusion of that report had any prejudicial effect on Mr. Sinkfield's appeal. At trial, Mr. Sinkfield and his stand-by attorney cross-examined DUSM Lowe about a discrepancy between his trial testimony and a statement in his report, and DUSM Lowe admitted that his statement in the report was false. Introduction of the report into evidence would have added nothing additional on this issue. Further, admission of the report was precluded under the evidentiary rules. To the extent that admission was sought to establish an inconsistency, that goal was already accomplished by DUSM Lowe's admission on the stand, and Fed. R. Evid. 613(b) precludes the admissibility of extrinsic evidence of a prior inconsistent statement.

4. Use of unconstitutional, erroneous jury instructions

Mr. Sinkfield's claim that he was not given an opportunity to review the jury instructions is contradicted by the record. When asked if he had a chance to review the instructions, Mr. Sinkfield responosed: "Yes, I have." (ECF #122, Trial Trans., PageID 633). He also made objections to the instructions at the start of trial. (ECF #122, Trial Trans., PageID 623, 633). His claim that the

instructions improperly shifted the burden on his requested self-defense instruction is also contradicted by the record, as no instruction on self-defense was given. There was no requirement to instruct on self-defense because the evidence did not support this defense. (ECF #123, Trial Trans., PageID 880, 1019-20). There was also no reason to charge the jury on a lesser included offense. The charge in this case was that Mr. Sinkfield assaulted the officers by hitting them with his car. The car is considered a deadly or dangerous weapon. Therefore, if he hit the officers with his car, he would be convicted; if he did not hit them with his car, he would have been acquitted. There was no evidence to support a potential lesser offense. A judge is only consitutionally required to instruct on a lesser included offense if the evidence would permit a jury to rationally find the defendant guilty of the lesser offense and acquit him of the greater offense. Hopper v. Evans, 456 U.S. 605, 611-12 (1982). Further, the use of a deadly or dangerous weapon was an element of the crime and the jury found that this element was proven. Therefore, even if a lesser offense had been charged, the prosecution proved the use of a weapon which justified the higher penalty. Mr. Sinkfield cannot establish a reasonable likelihood of prejudice arising from the failure to appeal this supposed error.

     5.     <u>Improper addition of eight levels to his total offense level</u>

Mr. Sinkfield's argument that he improperly received a two-level enhancement under U.S.S.G. § 3C1.2, and a six-level enhancement under § 3A1.2(a)(1)(2)(b) is conclusory and incorrect. He offers no argument to explain why he believes these enhancements were unwarranted. He challenged the enhancements at sentencing, and the Court found that they were properly applied. He has offered no reason why he believe this decision was in error, and offers no support for his claim that his appellate counsel should have challenged the ruling.

     6.     <u>Improper indictment</u>

Mr. Sinkfield, in his sixth claim, makes the conclusory statement that he was forced to stand trial and was convicted "on an indictment which the government knows is based on perjured testimony, violating the Due Process Clause of the Fifth Amendment." (ECF #140; PageID 1262). He offers no further elucidation of this claim. He does not specify what testimony he believes was perjured or what arguments he believes appellate counsel could have made in this regard. Further, because he was later convicted at trial, he could not establish prejudice stemming from any alleged purjury at the Grand Jury stage of the proceedings. No prejudice can be established by the presentation of false evidence at the Grand Jury if a petit jury subsequently convicts the defendant. *See United States v. Morgan*, 384 F.3d 439, 443 (9th Cir. 2004).

       7.     <u>Court's failure to answer pretrial discovery request motions</u>

Finally, Mr. Sinkfield alleges his appellate counsel was ineffective for failing to inform the appellate court that some of Mr. Sinkfield's pre-trial motions went unanswered. He does not specify which motions he believes are relevant to this claim, or how they would have affected the outcome of his appeal. This claim is conclusory and insufficient to establish any deficiency in his representation, or any reasonable likelihood of prejudice in the proceedings.

## Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> > (B) the final order in a proceeding under section 2255.

>(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
>(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484.

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability.

## Conclusion

For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence In Accordance With Title 28 U.S.C. § 2255 (ECF #134, 140) is DENIED. Because the files and records in this case conclusively show that Petitioner is entitled to no relief under § 2255, no discovery or evidentiary hearing is required to resolve the pending Motion. Therefore, Mr. Sinkfield's Motion for Discovery and Request for an Evidentiary Hearing are also DENIED. (ECF #141). Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal

from this decision could not be taken in good faith, and that there is no basis on which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed.R.App.P. 22(b).  IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
Senior United States District Judge

DATE: June 30, 2020